UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

FRED LEE DAVENPORT,

                Plaintiff,

v.                                            Case No. 24-cv-136-pp

RODNEY KLANG, *et al.*,

                Defendants.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON EXHAUSTION GROUNDS (DKT. NO. 18), DENYING AS MOOT PLAINTIFF'S MOTION TO COMPEL DISCOVERY (DKT. NO. 26), GRANTING PLAINTIFF'S MOTION TO EXPEDITE RULING (DKT. NO. 35) AND DISMISSING CASE**

      Plaintiff Fred Lee Davenport, who is incarcerated at Columbia Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. The court screened the complaint and allowed the plaintiff to proceed on an Eighth Amendment claim against defendants Dr. Kyla Holly, Sgt. Moore, Captain Bonfigglio, CO Vang, Michael Dobson, Rodney Klang, Kyle Firsh and Rebecca Tervonen based on allegations that they disregarded the plaintiff's threats to self-harm and/or ignored his actions after he started to harm himself. Dkt. No. 7 at 6. The defendants have filed a motion for summary judgment on exhaustion grounds. Dkt. No. 18. This order grants that motion and dismisses the case without prejudice. The order also denies as moot the plaintiff's motion to compel discovery, dkt. no. 26, and grants the plaintiff's motion to expedite ruling, dkt. no. 35.

1

## I. Facts[1]

During the events described in the complaint, the plaintiff was incarcerated at Columbia Correctional Institution and the defendants worked there. Dkt. No. 20 at ¶¶1-2. The court allowed the plaintiff to proceed on an Eighth Amendment failure-to-protect claim based on allegations that on December 4, 2023, the defendants failed to intervene when the plaintiff was cutting himself. Id. at ¶3.

Mary Leiser, who is not a defendant, works at Columbia as a program assistant. Id. at ¶4. In that position, Ms. Leiser picks up incarcerated individuals' administrative complaints from units and reviews them. Id. at ¶5. She determines whether complaints meet the criteria to be processed under Wis. Admin. Code §DOC 310.07 or whether they should be returned to the incarcerated individual under §DOC 310.10(5). Id.

Ms. Leiser has the authority to return complaints that are procedurally deficient. Id. at ¶6. Generally she is not involved in investigating or making recommendations regarding accepted complaints. Id. If a complaint is procedurally deficient, a return letter is prepared and sent to the incarcerated individual. Id. The letter outlines what the individual needs to do to correct the complaint. Id. Returned complaints or returned submissions are not processed as complaints, are not considered to be complaints due to their deficiencies and are not entered into the Inmate Complaint Review System (ICRS). Id. at ¶8.

---

[1] The court includes only material, properly supported facts in this section. See Fed. R. Civ. P. 56(c).

If an incarcerated individual submits a properly formatted complaint, Ms. Leiser will accept it and enter it into the inmate complaint tracking system, and a complaint number will be generated. Id. at ¶7. The institution complaint examiner (ICE) then is responsible for rejecting or investigating the complaint and providing a recommendation to the reviewing authority. Id. In late October/early November 2023, both ICEs at Columbia left their positions. Id. at ¶9. While Columbia was down two ICEs, Ms. Leiser processed complaints, including complaints submitted by the plaintiff. Id. An ICE from New Lisbon Correctional Institution also helped answer complaints from Columbia. Id.

A. Complaints Returned on December 14, 2023

On December 14, 2023, Ms. Leiser returned a complaint to the plaintiff regarding an incident on December 2, 2023. Id. at ¶10. Ms. Leiser returned the complaint because the plaintiff did not include proof that he tried to resolve the issue by following the designated chain of command—by contacting Corrections Program Supervisor (CPS) Olson—prior to filing the complaint, as required by §DOC 310.07(1).[2] Id. at ¶11. Ms. Leiser also returned the

---

[2] The plaintiff disagrees with this fact; he says that he "clearly depicted on the proper form the section where they ask who did I attempt to resolve your one issue, UM Olson who is CPS Olson UM stands for Unit Manager which is the Alternative title to CPS." Dkt. No. 24 at ¶11. But the December 14, 2023 letter returning his complaint to him informed the plaintiff that he must "[c]ontact Mr. C. Olson, Corrections Program Supervisor," that he must "[p]rovide proof that [he] followed the chain of command" and that he must "[s]ubmit related correspondence/supporting documentation." Dkt. No. 21-2 at 1. The plaintiff's response to the defendants' proposed findings of fact does not state that he did any of those things; although he says that he wrote something on a form, he does *not* say that he provided that form, or any other proof, to Mr. Olson.

3

complaint because it did not contain one clearly identified issue per §DOC 310.07(5). Id. at ¶12. The return letter instructed the plaintiff to follow the chain of command and provide "one specific time of incident." Id. at ¶13. The return letter said that the plaintiff had ten days from the date of the return letter (December 14, 2023) to resubmit the complaint. Id.

On December 14, 2023, Ms. Leiser returned a complaint to the plaintiff regarding an incident on December 4, 2023, which is the incident described in this federal complaint. Id. at ¶14. Ms. Leiser returned the complaint because the plaintiff did not include proof that he had attempted to resolve the issue by following the designated chain of command—that is, by contacting CPS Olson—before filing the complaint, as required by §DOC 310.07(1).[3] Id. at ¶15. Ms. Leiser also returned the complaint because it did not contain one clearly identified issue per §DOC 310.07(5). Id. at ¶16. The plaintiff wrote about multiple issues with multiple staff that occurred across first shift.[4] Id. The return letter instructed the plaintiff to follow the chain of command and provide one specific time of incident. Id. at ¶17. The letter said that the plaintiff

---

[3] The plaintiff disputes this fact, saying that he "clearly depicted on the form UM Olson." Dkt. No. 24 at ¶15. Again, however, the plaintiff's response to the defendants' proposed findings of fact does not assert that the plaintiff contacted Mr. Olson and tried to resolve the issue before filing his complaint.

[4] The plaintiff disagrees, stating that he "clearly depicted in HJ required; designated section deliberate indifference." Dkt. No. 24 at ¶16.

had ten days from the date of the return letter (again, December 14, 2023) to resubmit the complaint.[5] Id.

B. Complaints Processed on December 18, 2023

On December 18, 2023, the ICE's office received and acknowledged complaint CCI-2023-18831. Id. at ¶18. This complaint related to a PREA (Prison Rape Elimination Act) issue on December 3, 2023. Id.

On December 18, 2023, the ICE's office received and acknowledged complaint CCI-2023-18832. Id. at ¶19. This issue of this complaint was a self-harm incident on December 2, 2023. Id. This complaint also was the subject of the return letter referenced above at ¶¶10-13. Id. The plaintiff has a separate federal lawsuit pending regarding this December 2, 2023 incident. Id.

On December 18, 2023, the ICE's office received and acknowledged complaint CCI-2023-18833. Id. at ¶20. This complaint was regarding a PREA issue on December 1, 2023. Id.

Under DOC 310.07(7), an incarcerated individual may not file more than one complaint per calendar week except complaints regarding the individual's personal health and safety or complaints regarding the PREA.[6] Id. ¶23.

---

[5] The plaintiff acknowledges that the return letter said he had ten days (until December 24, 2023) to resubmit his complaint. Dkt. No. 24 at ¶17. But he says that the letter also said that he "was still held to the 14 day limit which led [him] to believe [he] was held to the 14 day limit." Id.

[6] The plaintiff states that "[t]his was wrongfully done." Dkt. No. 24 at ¶23. He concedes that he filed four complaints but maintains that all four were proper under "Wis. Adm. Code §DOC 310." Dkt. No. 25 at ¶9. He says he was confused about why his complaints were being returned. Id. He says that the ICE accepted three of the four complaints. Id. And he says that the December 4, 2023 complaint "wasn't accepted though [he] understood per the DOC

Complaints CCI-2023-18831, 18832, and 18833 were accepted in the same week (December 17–23, 2023) because CCI-2023-18831 and 18833 were related to the PREA. Id. at ¶21. Typically, the ICE's office would not have accepted CCI-2023-18832 because the plaintiff already had had two PREA complaints accepted that day, but sometimes additional complaints get accepted by mistake. Id.

    C.    <u>Complaints Returned on December 18 and 20, 2023</u>

On December 18, 2023, Ms. Leiser returned a complaint to the plaintiff regarding the incident on December 4, 2023 that is the subject of this case. Id. at ¶22. This complaint also was the subject of the December 14, 2023 return letter referenced above at ¶¶14-17. Id. Ms. Leiser returned this complaint because complaints CCI-2023-18831, 18832 and 18833 already had been accepted the week of December 17, 2023. Id. at ¶23.

The ICE's office interprets the health and safety exception as referring to a *current* threat to the incarcerated person's health and safety. Id. at ¶24. The plaintiff's complaint relating to the December 4 incident did not qualify under the personal health and safety exception because his complaint was about self-harm while on observation on December 4, 2023. Id. When the plaintiff submitted his complaint, he no longer was on clinical observation status and was not actively self-harming, so Ms. Leiser did not believe there was a present threat to his health and safety. Id. Ms. Leiser interpreted the plaintiff's

---

310.07(7)(A) exception rule [he] was good and proper to file this complaint." Id. at ¶10.

complaint to be about previous actions taken by staff.[7] Id. Although there is no weekly limit for complaints related to the PREA or a present danger to health and safety, if a PREA or health and safety complaint is filed, the ICE's office counts those complaints toward the one-per-week limit on non-PREA/health and safety complaints. Id. at ¶25.

On December 20, 2023, Ms. Leiser returned a complaint to the plaintiff regarding the incident on December 4, 2023 that is the subject of this case. Id. at ¶26. The return letter states that the complaint was received on December 20, 2023. Dkt. No. 21-8. Ms. Leiser returned this complaint because complaints CCI-2023-18831, 18832 and 18833 already had been accepted the week of December 17, 2023 under §DOC 310.07(7).[8] Id. at ¶27.

The plaintiff did not submit any complaints regarding December 4, 2023 that were accepted by the ICE.[9] Id. at ¶29.

The plaintiff had ten days from the date of Ms. Leiser's return letter on December 14, 2023 to resubmit his complaint regarding the December 4, 2023,

---

[7] The plaintiff states this is a wrongful interpretation because that verbiage is not included in the policy and that it was a present danger because he still was under the care of the named officers and supervisors. Dkt. No. 24 at ¶24.

[8] The plaintiff states that this "wasn't done in accordance to DOC 310.07(7)(a)." Dkt. No. 24 at ¶27.

[9] The plaintiff states that complaints CCI-2023-18831 and CCI-2024-61 detailed the December 4, 2023 issue, gave the complaint examiner notice of the alleged misconduct, "asked for good faith" and was accepted and reviewed on the merits. Dkt. No. 24 at ¶29. He says that this complaint was not deemed untimely and properly was appealed to the "CCP." Id.

7

incident.[10] Id. at ¶30. If the plaintiff had followed the instructions in Ms. Leiser's return letter and resubmitted his inmate complaint on December 24, 2023, it could have been accepted and processed as his one complaint for that week. Id.

**II. Analysis**

    A.    <u>Summary Judgment Standard</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a); see also <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986); <u>Ames v. Home Depot U.S.A., Inc.</u>, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." <u>See</u> <u>Anderson</u>, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be, or is, genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

---

[10] The plaintiff states that this wasn't "made clear" because the return letter said that he still was being held to the fourteen-day limit; he says that he wrote an interview request expressing this. Dkt. No. 24 at ¶30.

8

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

B.   Discussion

The defendants contend that the plaintiff failed to exhaust his administrative remedies because his complaint regarding the December 4, 2023 incident was returned for procedural reasons and never addressed on the merits. Dkt. No. 19 at 9-14.

The plaintiff responds that Ms. Leiser improperly returned his complaints about the December 4, 2023 incident and that, as a result, administrative remedies were unavailable to him. Dkt. No. 23 at 1. The plaintiff states that Ms. Leiser erred in returning his December 14, 2023 complaint about the December 4, 2023 incident. Id. at 1-2. According to plaintiff, contrary to Ms. Leiser's reasons for returning the complaint, he said in his complaint that he contacted "L.M. Olson," and his complaint did not contain more than one issue. Id. at 2. The plaintiff states that the return letter said that he still was being held to the fourteen-day time limit, which contradicted the statement in the return letter that he had ten days from the date of return to resubmit the complaint. Id. Regarding the plaintiff's December 18, 2023 attempt to make a complaint, the plaintiff recounts that the ICE officer accepted three of his four

9

complaints. Id. at 2-3. He says that the fourth, returned complaint qualified as a "health and safety" issue so he should have been allowed to file it under §DOC 310.07(7)(a), despite filing more than one complaint that week. Id. at 2-3. The plaintiff also states that Ms. Leiser erred in returning his complaint when, on December 20, 2023, he submitted it for a third time. Id. at 3.

The plaintiff states that the ICE did not clarify that he would be able to file his complaint on December 24, 2023. Id. at 5. He says that officials led him to believe that his remedies were no longer available, "once he raised these concerns and failed to tell him otherwise." Id. at 5-6. The plaintiff also argues that his PREA complaints from December 3, 2023 and December 21, 2023 gave notice about the December 4, 2023 incident. Id. at 6.

The Prison Litigation Reform Act (PLRA) states that an incarcerated individual cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a); see also Woodford v. Ngo, 548 U.S. 81, 93 (2006) (holding that the PLRA requires proper exhaustion of administrative remedies). Exhaustion requires that an incarcerated person comply with the rules applicable to the grievance process at his institution. Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The objective of §1997e(a) is to permit the institution's "administrative process to run its course before litigation begins." Dole v. Chandler, 438 F.3d

804, 809 (7th Cir. 2006) (quoting Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005)); see also Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006). The Seventh Circuit applies a "strict compliance approach to exhaustion" and expects incarcerated individuals to adhere to "the specific procedures and deadlines" established by the institution's policy. Dole, 438 F.3d at 809; see also Hernandez v. Dart, 814 F.3d 836, 842 (7th Cir. 2016) (citations omitted). Because exhaustion is an affirmative defense, the defendants bear the burden of proving that the plaintiff failed to exhaust. Pavey v. Conley, 544 F.3d 739, 740-41 (7th Cir. 2008) (citing Jones v. Bock, 549 U.S. 199, 216 (2007)).

The ICRS within the Wisconsin prisons is the administrative remedy available to incarcerated individuals with complaints about prison conditions or the actions of prison officials. Wis. Admin. Code §DOC 310.01(2)(a). Before an incarcerated person may commence a civil action, he must exhaust all administrative remedies that the Department of Corrections (DOC) has promulgated by rule. Wis. Admin. Code §DOC 310.05. The ICRS is available for incarcerated individuals to "raise issues regarding policies, living conditions, or employee actions that personally affect the inmate or institution environment." Wis. Admin. Code §DOC 310.06(1).

Before filing a formal complaint under the ICRS, an incarcerated individual "shall attempt to resolve the issue by following the designated process specific to the subject of the complaint." Wis. Admin. Code §DOC 310.07(1). "The ICE may request inmates to provide evidence of having followed the specified process." Id.

11

Case 2:24-cv-00136-PP   Filed 07/24/25   Page 11 of 19   Document 36

To use the ICRS, an incarcerated person must file a complaint with the ICE within fourteen days after the occurrence giving rise to the complaint. Wis. Admin. Code §DOC 310.07(2). Complaints submitted later than fourteen days after the event may be accepted for good cause. Id. Complaints may only contain "one clearly identified issue." Wis. Admin. Code §DOC 310.07(5). Incarcerated individuals "may not file more than one complaint per calendar week except that" complaints about the incarcerated individual's "health and personal safety" and complaints under PREA are not subject to the filing restriction. Wis. Admin. Code §DOC 310.07(7). The ICE can waive this requirement for good cause. Wis. Admin. Code §DOC 310.07(11).

The ICE shall accept, return or reject a complaint. Wis. Admin. Code §DOC 310.10(2). The ICE may return a complaint to permit the incarcerated individual to resubmit the complaint after correcting issues noted by the ICE. Wis. Admin. Code §DOC 310.10(5). "The ICE shall grant ten days for receipt of the corrected complaint." Id.

For complaints that are not returned, after reviewing and acknowledging each complaint in writing, the ICE either rejects the complaint or sends a recommendation to the "appropriate reviewing authority," who may recommend that the complaint be affirmed or dismissed in whole or in part. Wis. Admin. Code §§DOC 310.10(9), 310.10(12). Within fourteen days after the date of the decision, an incarcerated individual may appeal the reviewing authority decision to the Corrections Complaint Examiner (CCE). Wis. Admin. Code §DOC 310.09(1). Upon good cause as determined by the CCE, an appeal filed

12

later than fourteen days after the date of the reviewing authority decision may be accepted. Wis. Admin. Code §DOC 310.12(6). The CCE reviews the appeal and makes a recommendation to the secretary of the DOC. Wis. Admin. Code §DOC 310.12(9). The secretary affirms or dismisses the CCE's recommendation, or returns the appeal to the CCE for further investigation. Wis. Admin. Code §DOC 310.13(2).

Incarcerated individuals need only exhaust "available remedies, not remedies that are unavailable." Jackson v. Esser, 105 F.4th 948, 956-57 (7th Cir. 2024) (quoting Hacker v. Dart, 62 F.4th 1073, 1078 (7th Cir. 2023)). "If administrative remedies are genuinely unavailable or nonexistent because, for example, prison employees failed to respond to properly filed grievances, we consider the prisoner to have satisfied the exhaustion requirement." Id. at 957 (citing Pyles v. Nwaobasi, 829 F.3d 860, 864 (7th Cir. 2016)); see also Crouch v. Brown, 27 F.4th 1315, 1322-23 (7th Cir. 2022) (Prison officials may not take unfair advantage of the exhaustion requirement or make a remedy unavailable by failing to respond properly or by affirmative misconduct.).

The plaintiff contends that Ms. Leiser's allegedly erroneous refusal to accept his complaints about the December 4, 2023 incident made his administrative remedies unavailable. It is undisputed that the plaintiff first submitted a complaint about the incident on December 14, 2023. That same day, Ms. Leiser returned the complaint because the plaintiff had not satisfied the requirement that he provide proof of his attempt to informally resolve the complaint, and because his complaint raised more than one issue. The plaintiff

13

states that he satisfied the former requirement because he included the names of prison officials on his complaint, but he was asked to describe his attempts to informally resolve his issue, not just to provide names. In addition, Ms. Leiser did not believe that the complaint clearly identified the one issue the plaintiff wanted to grieve, and she asked him for more detailed information about his one issue. Incarcerated individuals must properly exhaust administrative remedies by complying with agency's procedural rules. Woodford, 584 U.S. at 93. The plaintiff has not shown that the return of his complaint on these grounds was unreasonable or invalid; Ms. Leiser simply required the plaintiff to comply with procedural rules. See Wis. Admin. Code §DOC 310.07(1) (incarcerated individual must formally attempt to resolve issue before filing complaint and ICE may request individuals to provide evidence of this); §DOC 310.07(5) (each complaint may contain only one clearly identified issue).

The return letter said that the plaintiff could "resubmit [his] complaint in accordance with DOC 310, after [he has] completed all of the instructions provided[.]" Dkt. No. 21-3 at 1. The letter also said, "You have 10 days to resubmit the complaint (DOC 310.10(5)). Id. And the letter stated that the ICE office would "continue to process complaints per the DOC-310 and will hold [the plaintiff] to those standards." Id.

On December 18, 2023, the plaintiff resubmitted a complaint about the December 4, 2023 incident. That complaint was returned because it was the fourth complaint the plaintiff had submitted that calendar week, so it violated

14

the one-complaint-per-week rule, Wis. Admin. Code §DOC 310.07(7). The plaintiff contends that his complaint should have fallen under the "health and personal safety" exception to the one-complaint-per-week rule because it related to prison staff members' alleged disregard of his suicide attempt on December 4, 2023. But prison staff interpret that exception to only apply to present dangers to incarcerated persons' health and safety, and Ms. Leiser determined that the plaintiff's complaint about a prior incident did not fall under the exception. Courts must defer to prison administrators regarding their grievance procedures. See Strong v. David, 297 F.3d 646, 649 (7th Cir. 2002) ("It is up to the administrators to determine what is necessary to handle grievances effectively."). The plaintiff has not shown that this interpretation was unreasonable. See Jurjens v. Chatman, Case No. 23-CV-88, 2024 WL 3823025, *4 (W.D. Wis. Aug. 14, 2024) (approving DOC's interpretation of §DOC 310.07(7)'s health and safety exception that it must be a current threat the health and safety). It is undisputed that the plaintiff had submitted three other complaints that calendar week. Ms. Leiser appropriately returned the complaint as violating §DOC 310.07(7).

On December 20, 2023, the plaintiff resubmitted his complaint about the December 4, 2023 incident. The complaint again was not accepted because it violated the one-complaint-per-week rule.

Under the DOC rules and the directions the plaintiff received in his December 14, 2023 return letter (stating, among other things, that he had ten days to resubmit his complaint), the plaintiff could have resubmitted his

15

complaint in the next calendar week—on December 24, 2023—and it still would have been timely. Dkt. No. 21-3 at 1. The return letters the plaintiff received on December 18, 2023 and December 20, 2023 did not include information about how long he had to resubmit his complaint, but they did say that the returns were "still being held to the 14-day time limit." Dkt. No. 21-7 at 1; Dkt. No. 21-8 at 1. The plaintiff states that he was confused about the time he had to resubmit his complaint and that, because the return letters said that his returns were still being held to the fourteen-day limit, if he had resubmitted his complaint on or after December 24, 2023 (*i.e.*, in the next calendar week), it would have been untimely. Even if the plaintiff believed that his complaint would have been untimely, he was required to try to submit one. An incarcerated person must file a complaint with the ICE within fourteen days after the occurrence giving rise to the complaint, but complaints submitted later than fourteen days after the event may be accepted for good cause. Wis. Admin. Code §DOC 310.07(2). The plaintiff's belief that a December 24, 2023 submission would have been untimely does not absolve him of his obligation to try to submit a complaint within the rules. The plaintiff had available administrative remedies, and he was required to use them. See Ross, 578 U.S. at 641-42.

Finally, the plaintiff's assertion that he submitted other complaints that referenced the December 4, 2023 incident does not satisfy the requirement that he exhaust his administrative remedies. He says that his PREA retaliation complaint from December 21, 2023 "gave notice of all alleged actions set forth

16

in this claim." Dkt. No. 25 at ¶11. Although the plaintiff's PREA retaliation complaint mentions the December 4, 2023 incident, that incident is not the issue the plaintiff raised in the complaint. Dkt. No. 21-8 at 3-4. The issue he raised in that complaint was being placed in a cell next to an incarcerated individual who was the subject of a prior PREA-related complaint that the plaintiff had submitted. Id. The plaintiff does not state that prison staff addressed his December 4, 2023 claim in this case through the ICRS with his PREA retaliation complaint. That complaint did not exhaust the plaintiff's administrative remedies.

The plaintiff has not exhausted his available administrative remedies. The court will grant the defendants' motion for summary judgment and dismiss this case without prejudice. See Ford v. Johnson, 362 F.3d 395, 401 (7th Cir. 2004).

Because the court has granted the defendants' motion for summary judgment on exhaustion grounds, it will deny as moot the plaintiff's motion to compel discovery related to the merits of his claim. Dkt. No. 26. The plaintiff also filed a motion to expedite ruling on his motion for summary judgment on exhaustion grounds. Dkt. No. 35. Because this order addresses that motion, the court will grant the motion to expedite.

### III. Conclusion

The court **GRANTS** the defendants' motion for summary judgment for failure to exhaust administrative remedies. Dkt. No. 18.

The court **DENIES AS MOOT** the plaintiff's motion to compel discovery. Dkt. No. 26.

The court **GRANTS** the plaintiff's motion to expedite ruling. Dkt. No. 35.

The court **ORDERS** that this case is **DISMISSED WITHOUT PREJUDICE**. The clerk will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. Rule of App. P. 4(a)(5)(A).). If the plaintiff appeals, he will be liable for the $605 appellate filing fee regardless of the outcome of the appeal. If the plaintiff seeks to proceed on appeal without prepaying the appellate filing fee, he must file a motion *in this court*. See Fed. R. App. P. 24(a)(1). The plaintiff may be assessed a "strike" by the Court of Appeals if it concludes that his appeal has no merit. If the plaintiff accumulates three strikes, he will not be able to file a case in federal court (except a petition for *habeas corpus* relief) without prepaying the full filing fee unless he demonstrates that he is in imminent danger of serious physical injury. Id.

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under

Rule 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 24th day of July, 2025.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER
Chief United States District Judge**